UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

YVONNE MARIE SIMON,

                Plaintiff,                            Case No. 13-cv-14353

v.                                            Honorable Thomas L. Ludington

WAL-MART ASSOCIATES, INC.,

                Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Wal-Mart removed this case to this Court on October 15, 2013. The case was originally filed by Plaintiff Yvonne Simon in Iosco County Circuit Court on September 11, 2013. Simon claims that she was the victim of an adverse employment action by Defendant in violation of Michigan's Eliot Larsen Civil Rights Act (ELCRA). Namely, her employment was terminated because of her age and gender. Wal-Mart, in response, asserts that they discharged her consistent with their employment policies and practices that explicitly bar "grazing" and categorize it as a terminable offense. Grazing, it seems, is a term of art addressing the practice of employees, who are responsible for the sale of food products to customers, consuming the food product without compensation to the employer. Wal-Mart has moved for summary judgment. Since Wal-Mart's employment policies are clear and there is no material issue of fact as to Plaintiff's behavior, summary judgment will be granted for Defendant.

**I.**

Simon began working at the Wal-Mart in Tawas City on October 25, 2006 when she was 44 years old. ECF No. 17, Pl. Resp. Br. at 1-2. She was hired to a part time position there by

Robert Shores. *Id*. In January of 2007 she was assigned to a full time position. *Id*. Simon was offered the promotion by an assistant manager and the promotion was ultimately approved by Tawas City Store Manager Scott Mousseau. ECF No. 14, Def. Mot. Ex. A at 24-25. This promotion included a raise in pay. *Id*.

Eventually, in October 2008, Simon received another promotion, this time to "Department Manager over HBA and Cosmetics." ECF No. 17, Pl. Resp. Br. at 3. Simon was promoted by Niona Williams. *Id*. One year later, Simon was again promoted. She was moved into the position of Zone Merchandise Supervisor (ZMS) for Hardlines, which includes sporting goods, garden supplies, toys, and other non-consumables. *Id*. Simon received this promotion from Scott Mousseau. ECF No. 14, Def. Mot. Ex. A at 51-52. Simon was then promoted by Mr. Mousseau again, this time to ZMS of "fresh consumables," which includes food and other perishables. *Id*.

### A.

As ZMS of fresh consumables Simon was required to "participate in the . . . training, coaching, and evaluation of associates in assigned areas." ECF No. 14, Def. Mot. Ex. C at 2. In fact, Simon acknowledges that she often undertook to instruct associates in her charge about various job responsibilities, one of which was not to graze. ECF No. 14, Def. Mot. Ex. A at 65-66. She was aware that grazing could lead to termination and warned those under her supervision of that consequence. *Id*. Simon was aware of at least two associates that were terminated for grazing while she was ZMS of fresh consumables: Chelsea Stecker and Kyle Parker. *Id*. at 66-68 & 70. Simon forwarded complaints that both of these individuals were grazing to the proper management employees which led to their termination. ECF No. 17, Def. Resp. Br. at 5-6.

**B.**

At the close of Mr. Parker's investigation for grazing he was called in to have an "integrity interview," the standard culmination of a grazing investigation. *Id*. at 6. During the interview, Mr. Parker admitted to grazing but then also implicated Simon. *Id*. at 7. Following Mr. Parker's interview, Market Asset Protection Manager Michael McKiness and Assistant Manager Brandy Trombley called Simon in for an interview. *Id*. at 8. At this interview Simon initially denied the practice. Eventually, however, she admitted that she put chicken poppers in her mouth to taste them but then spit them back out. *Id*. at 9. She explained that this was done to see whether one could taste the residue of alcohol in the chicken after the chicken poppers had been tested for proper temperature. *Id*.; ECF No. 14, Def. Mot. Ex. A at 78-81.

**C.**

Following Simon's admission of tasting chicken poppers she was placed on leave. ECF No. 14, Def. Mot. Ex. A at 91. After a short period on leave Simon was terminated. *Id*. at 93. She was terminated by Mr. Mousseau, who told her that her grazing was the reason for her termination. *Id*. Defendant, in turn, hired a younger male to fill Simon's position. ECF No. 17, Pl. Resp. Br. at 10.

**D.**

Wal-Mart maintains a series of practices and procedures for all individuals employed at their retail locations. For those employees working in food service, they have a Food Safety Guide that serves "as a reference tool for Food Safety & Health Issues." ECF No. 14, Def. Mot. Ex. E at 6. Simon was familiar with these procedures, which included the proper method for ensuring the temperature of food and reporting food safety issues. *Id*., Def. Mot. Ex. A at 54-55. Employees are required to acknowledge that they "may face disciplinary action, up to and

including termination of employment for disregard of established processes and procedures." *Id*., Def. Mot. Ex. E at 4.

Wal-Mart also maintains 'coaching' procedures for when disciplinary action must be taken against employees. *See Id*., Def. Mot. Ex. I. "Coaching for Improvement occurs when an Associate's behavior (job performance or misconduct) fails to meet the Company's expectations[.]" *Id*. at 4. Different coaching levels exist so that an appropriate response may be tailored to the conduct at issue. *Id*. "However, there will be some situations where use of the coaching process is not warranted and instead, the Associate's employment is automatically terminated." *Id*. Such situations fall under the "Gross Misconduct" section in the policy. *Id*.

The section of the coaching procedures entitled "Behavior Classification" notes that "Gross Misconduct will not be tolerated." *Id*. at 7. "The employment of an Associate who is deemed to have engaged in gross misconduct is subject to immediate termination." *Id*. at 8. The policy lists a series of examples of conduct that is "usually classified as gross misconduct." *Id*. The list "is not all-inclusive." *Id*. Included in the list is "Grazing (i.e., opening packages, purposefully damaging items, removing items from the shelf to eat, or any other act which causes a financial loss the Company)." *Id*.

## II.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). The moving party has the initial burden of identifying where to look in the record for evidence

"which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).

The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52, *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III.

Simon alleges that she was dismissed from her position at Wal-Mart because of her age and her gender. It is her contention that this dismissal violated the ELCRA. The ELCRA provides that an employer shall not: "Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . age, [or] sex[.]" Mich. Comp. Laws § 37.2202(1)(a). A plaintiff may establish a claim of unlawful discrimination under the ELCRA either through direct evidence of discrimination or through the presentation of a prima facie case of discrimination in accordance with the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *See Town v. Mich. Bell Tel. Co.*, 568 N.W.2d 64, 67-68 (Mich. 1997) (employing the *McDonnell Douglas* framework in analyzing a

claim under the ELCRA); *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520-21 (Mich. 2001) (same). It is undisputed that Plaintiff has not advanced any direct evidence of discrimination and so the analysis will proceed under the burden shifting framework.

To establish a prima facie case, a plaintiff must show that "(1) she was a member of the protected class; (2) she suffered an adverse employment action . . . ; (3) she was qualified for the position; but (4) she was discharged under circumstances that give rise to an inference of unlawful discrimination." *Lytle v. Malady*, 579 N.W.2d 906, 914 (Mich. 1998). In some age discrimination cases, the fourth prong of the prima facie case can be satisfied with evidence that the plaintiff "was replaced by a younger person." *Id.* at 916. Here, Plaintiff asserts both age and sex discrimination as motivating factors in her termination. Defendant does not contest that Plaintiff is able to develop a prima facie case so the Court need not engage the analysis. The focus of both parties' briefs is on the next two steps of the burden-shifting framework.

Once a prima facie case is demonstrated, a presumption of unlawful discrimination arises and the burden shifts to the defendant to articulate a "legitimate nondiscriminatory reason" for the adverse employment action. *Lytle*, 579 N.W.2d at 915. If the defendant is able to make this showing, the burden shifts back to the plaintiff. *Id.* At that point, the "plaintiff ha[s] to show . . . that there [i]s a triable issue that the employer's proffered reasons were not true reasons, but were a mere pretext for discrimination." *Id.* Pretext can be shown in three ways: "(1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." *Feick v. Cnty. of Monroe*, 582 N.W.2d 207, 212 (Mich. Ct. App. 1998) (citation omitted). Defendant claims that Plaintiff was fired because she admitted to grazing, a behavior for which Defendant has zero tolerance. *See* ECF No. 14, Def.

- 6 -

Mot. Br. Plaintiff claims that this was mere pretext since by not swallowing the food, she did not

eat it, and thus did not graze. *See* ECF No. 17, Pl. Resp. Br.

It is important to note that "mere disproof of an employer's proffered 'nondiscriminatory'

reason is insufficient to survive summary disposition, unless such disproof also raises a triable

question of discriminatory motive, not mere falsity." *Lytle*, 579 N.W.2d at 918. So Plaintiff's

attempt to show that the policy is at least ambiguous as to whether it covers tasting will not

survive summary judgment unless there is accompanying proof of animus. Just because

Defendant "is ultimately shown to be incorrect" in their reason for discharge about which they

otherwise held "an honest belief," does not mean "that the reason was pretextual." *Majewski v.*

*Automatic Data Processing*, 274 F.3d 1106, 1117 (6th Cir. 2001); *see also Movsisyan v. IPAX*

*Cleanogel, Inc.*, No. 299235, 2013 WL 2494979 (Mich. Ct. App. June 11, 2013) appeal denied,

845 N.W.2d 107 (2014) (affirming place of "honest belief" rule of *Majewski* in Michigan

discrimination law).

Simon fails to show that the reasons behind her termination were actually pretext for age

and gender discrimination. The thrust of her claim is that she merely tasted the chicken poppers

as a matter of quality control and did not actually eat them. She contends that actual proof of

consuming the chicken is necessary to violate Wal-Mart policy and lead to termination. See ECF

No. 17, Pl. Resp. Br. at 15-16. But the evidence speaks to the contrary. Wal-Mart's Coaching for

Improvement Policy explicitly delineates the types of behavior that can warrant a citation for

gross misconduct. ECF No. 14, Def. Mot. Ex. I at 8. One of the behaviors listed is "Grazing (i.e.,

opening packages, purposefully damaging items, removing items from the shelf to eat, or any

other act which causes a financial loss to the Company)." *Id*. The Policy notes that the "list is not

all-inclusive but serves as examples of conduct, which are usually classified as gross misconduct

and may result in immediate termination." *Id*. The policy is plain: grazing is not limited to eating. And Simon offers nothing to suggest that her job responsibility included tasting the food as a method of quality control.

Simon admitted both in her investigatory interview with supervisors and in her deposition that she placed chicken poppers in her mouth, rendering them unsalable and imposing a loss on Wal-Mart. ECF No. 14-2, Def. Ex. A at 78-81 & 86-87. Simon's belief that she was acting in the best interest of Wal-Mart's customers does not change the result. "An employee's opinion that [s]he did not perform poorly is irrelevant to establishing pretext where the employer reasonably relied on specific facts before it indicating that the employee's performance was poor." *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 802 (6th Cir. 2007) (deciding claims under the ELCRA).

Furthermore, even if Wal-Mart's policy was shown to be ambiguous about what constitutes "tasting," Plaintiff still would not present a triable issue of fact. At the summary judgment stage it is insufficient to merely claim that the employer's reason for dismissal was wrong, pretextual, or simply not the real reason for termination. For a plaintiff to survive summary judgment she needs to make a further showing. A plaintiff must show there is a triable issue of fact that she was dismissed for a discriminatory reason. *See Town*, 568 N.W.2d at 69. "Thus, plaintiff will not *always* present a triable issue of fact merely by rebutting the employer's stated reason(s); put differently, that there may be a triable question of *falsity* does not necessarily mean that there is a triable question of discrimination." *Id*. (internal quotation marks omitted). Even if Simon shows that the reasons offered for her dismissal were fabricated, she has failed to show that discrimination was the true reason for her dismissal.

**IV.**

The fact that Simon rendered chicken poppers unsalable, at a loss to Wal-Mart, and that this action served as the basis for her termination is not in dispute. Her complaint will be dismissed and summary judgment granted for Defendant.

Accordingly, it is **ORDERED** that Defendant Wal-Mart Associates, Inc.'s Motion for Summary Judgment (ECF No. 14) is **GRANTED.**

It is further **ORDERED** that Plaintiff's Complaint (ECF No. 1) is **DISMISSED** with prejudice. This is a final order and closes the case.

Dated: September 30, 2014                                 s/Thomas L. Ludington
                                                         THOMAS L. LUDINGTON
                                                         United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 30, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS